## In re SUNRISE SECURITIES LITIGATION

**This Document Relates To:
Popkin v. Jacoby.**

Civ. A. No. 88–1713.
MDL No. 655.

United States District Court,
E.D. Pennsylvania.

Nov. 9, 1989.

Fine, Kaplan & Black, Philadelphia, Pa., for depositor plaintiffs.

Berger & Montague, P.C., Philadelphia, Pa., Greenfield & Chimicles, Haverford, Pa., for shareholder plaintiffs.

Squire, Sanders & Dempsey, Washington, D.C., for FSLIC.

Dechert, Price & Rhoads, Philadelphia, Pa., for defendants.

### MEMORANDUM

O'NEILL, District Judge.

In this action[1], plaintiffs, former depositors at Sunrise Savings and Loan Association of Florida ("Old Sunrise") and Sunrise Savings and Loan Association, a Federal Savings and Loan Association ("New Sunrise"), allege violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968, common law fraud, deceit and intentional misrepresentation by former officers, directors, general counsel and independent auditors of Old Sunrise. Presently before the Court are motions for summary judgment by a number of defendants[2] in the Depositors case.

These motions concern the legal limitations on a depositor's right to recover funds lost upon a thrift's insolvency through claims against a thrift's officers, directors, outside legal counsel and auditors. The moving defendants argue that the depositor plaintiffs cannot establish that defendants' alleged acts and omissions legally caused plaintiffs' losses because the losses occurred due to the insolvency of New Sunrise, not of Old Sunrise. Blank Rome also argues that the claims asserted by the depositor plaintiffs are derivative and therefore can be asserted only by FSLIC,[3] the receiver of New Sunrise, not by the depositors individually. In addition, FSLIC contends that recognition of the claims asserted by the depositor plaintiffs would disrupt the federal regulatory scheme established to ensure efficient and equitable distribution of an insolvent thrift's assets among all its creditors.

*Background*

Plaintiffs Anne and George Popkin purchased five six-month certificates of deposit from Old Sunrise on October 11, 1984, each in the amount of $100,000. Memoran-

---

1. Three groups of claims have been consolidated for pretrial proceedings in this multidistrict litigation: state common law and Securities Exchange Act of 1934 claims asserted by Old Sunrise shareholders (the "Securities case"); fiduciary duty claims asserted by the Federal Savings and Loan Insurance Corporation ("FSLIC") in its corporate capacity (the "Fiduciary Duty case"); and state common law and civil RICO claims asserted by former Old Sunrise depositors (the "Depositors case"). The present motions concern the Depositors case only.

2. The following defendants have moved for summary judgment in the Depositors case: Alan B. Keiser, Nathaniel B. Jacobs, Robert Logsdon, Robert T. Siemon, George Greenberg, Lake Lytal and Bernard Simonson (the "Outside Directors" of Old Sunrise); Deloitte Haskins & Sells; Robert C. Jacoby; M. Kalman Gitomer; Michael D. Foxman; and Blank, Rome, Comisky & McCauley ("Blank Rome").

3. FSLIC was dissolved by the recently enacted Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub.L. No. 101–73, § 401, 103 Stat. 183, 354 (1989). In order to minimize confusion, the term "FSLIC" will be used in this memorandum to refer to FSLIC and its successor agency under the FIRREA.

dum in Support of Outside Directors' Motion for Summary Judgment, Exhibit B (Affidavit of Linda Raflowitz), ¶ 7(a); Deposition of George Popkin (July 12, 1988), Addendum. In order to ensure that their deposits would be covered by FSLIC insurance, the Popkins purchased their certificates in the names of: George Popkin; Anne Popkin; George Popkin in trust for Anne Popkin; Anne Popkin in trust for George Popkin; and George or Anne Popkin. Popkin Deposition, at 17–18. When their certificates matured on April 11, 1985, the Popkins withdrew all interest earned on the certificates, and rolled over the principal into five one-year $100,000 certificates of deposit with Old Sunrise. Complaint, ¶ 3; Raflowitz Affidavit, ¶ 7(b); Popkin Deposition, at 17.

On July 18, 1985, the Federal Home Loan Bank Board ("FHLBB") determined that Old Sunrise was insolvent and appointed the FSLIC as receiver. That same day, FSLIC as receiver organized a new federal savings and loan association, New Sunrise, and transferred substantially all of the Old Sunrise assets and liabilities, including the full amounts of deposits in interest-bearing accounts and certificates of deposit, to New Sunrise. *See* Order of July 29, 1987 (dismissing certain counterclaims of Blank Rome against FSLIC; MDL 655 Docket # 524), at 1; Order of July 29, 1987 (striking certain defenses of the outside directors; MDL 655 Docket # 525), at 1. No Old Sunrise depositors, including the Popkins, lost any portion of their deposits or interest when their Old Sunrise accounts were transferred to New Sunrise, even if their deposits exceeded the insurance limit of $100,000 under 12 C.F.R. §§ 564.3 and 564.4. Raflowitz Affidavit, ¶ 3.[4] Former Old Sunrise accounts transferred to New

Sunrise remained subject to the same terms and conditions, including maturity dates and early withdrawal penalties, established when the accounts were opened. Raflowitz Affidavit, ¶ 3.

When their certificates matured on April 11, 1986, the Popkins received the full amount of principal and interest due. Raflowitz Affidavit, ¶ 7(c); Popkin Deposition, at 37–39. The Popkins withdrew the interest and rolled over the principal into five new one-year $100,000 certificates with New Sunrise, each in the amount of $100,000. Raflowitz Affidavit, ¶ 7(c); Popkin Deposition, at 35.

On September 12, 1986, the FHLBB declared New Sunrise insolvent and appointed FSLIC as receiver. By early October 1986, the Popkins' five accounts were reopened at Beach Federal Savings and Loan Association, the successor to New Sunrise; each certificate was opened in the amount of $100,000, reflecting the insured amount in each of the Popkins' New Sunrise certificates. Raflowitz Affidavit, ¶ 7(e); Popkin Deposition, Addendum.

In early October 1986, FSLIC acknowledged and treated as uncontested the claim of each New Sunrise account holder for the uninsured portion of his or her deposit. Memorandum of FSLIC in Support of Certain Defendants' Motions for Summary Judgment, at 9. The Popkins were issued five Certificates of Claim in Liquidation of New Sunrise in the amount of $3,322.43, reflecting the $3,322.43 in interest earned per certificate between April 11 and September 12, 1986. Memorandum of FSLIC in Support of Certain Defendants' Motions for Summary Judgment, Exhibit B; Popkin Deposition, at 54–55.

---

**4.** The Popkins allege in their complaint that when Old Sunrise depositors' accounts were transferred to New Sunrise, "[a]ll amounts standing in each depositor's account or certificate of deposit in excess of $100,000 were lost." Complaint, ¶ 30. The Outside Directors of Old Sunrise disputed this allegation in their opposition to plaintiffs' motion for class certification. In my Order of April 17, 1989, regarding plaintiffs' motion for class certification, I directed the parties to submit "any additional evidence relevant to the question of whether depositors

suffered any losses as a result of the transfer of accounts from Old Sunrise to New Sunrise." The Popkins submitted a memorandum in response, stating that "[p]laintiffs accept the representation made by FSLIC and the defendants that injury to the depositors did not occur at that time [i.e., when Old Sunrise accounts were transferred to New Sunrise], and instead occurred at the time of failure of New Sunrise shortly thereafter." Plaintiffs' Submission in Response to the Court's Order of April 17, 1989, at 1.

FSLIC has made three partial distributions of proceeds from liquidation of New Sunrise assets to all New Sunrise account holders who had uninsured deposits, including the Popkins: on July 6, 1988, 34.2785% of each depositor's claim; on December 28, 1988, 5.059548%; and on June 6, 1989, 4.1097%. Memorandum of FSLIC in Support of Certain Defendants' Motions for Summary Judgment, at 9–10, Exhibit C. As of the date of this Memorandum, FSLIC has distributed to each New Sunrise account holder a total of 43.45% of his or her uninsured deposit. The Popkins currently have outstanding claims of losses of $1,878.92 per certificate, or a total of $9,394.60. Memorandum of FSLIC in Support of Certain Defendants' Motions for Summary Judgment, at 9–10, Exhibit C.

The Popkins filed this action on February 29, 1988. Also outstanding at present is the Popkins' motion for certification under F.R.C.P. Rule 23(a) and (b)(3) of a plaintiff class defined as

> all persons who, as of July 15, 1985, had money deposited in savings or other interest-bearing accounts at Sunrise Savings and Loan Association of Florida ("Sunrise") or owned certificates of deposit issued by Sunrise, and who have suffered losses in such accounts or certificates of deposit by reason of the reorganization and ultimate closing of Sunrise.

*Discussion*

Under Fed.R.Civ.P. Rule 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." An issue of material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The Supreme Court has held that the Rule mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The parties who have submitted briefs supporting the motions for summary judgment argue that there are three different bases for summary judgment against the Popkins: the Popkins cannot establish that the defendants' alleged acts proximately caused the Popkins' losses; the Popkins' claims are derivative and can be asserted only by FSLIC, the receiver of New Sunrise, not by the Popkins or other depositors individually; and recognition of the Popkins' claims would disrupt the federal regulatory scheme established to ensure efficient and equitable distribution of an insolvent thrift's assets among all its creditors. I find that, to the extent that the Popkins seek to recover on the bases that defendants' alleged wrongdoing caused New Sunrise to fail, or that defendants made misrepresentations to conceal and omitted to reveal that defendants had injured Old or New Sunrise, they have asserted derivative claims belonging to FSLIC. To the extent that the Popkins seek to recover on the basis that defendants misrepresented Old Sunrise's financial condition, I find that the Popkins cannot establish that any such representations caused their losses.

Federal jurisdiction over this action is based on the Popkins' RICO claim. Complaint, ¶ 1. To recover under RICO, the Popkins must establish that they have standing: "the plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). The question posed by Blank Rome is whether the Popkins and the class of depositors they seek to represent "have suffered any individual injury to their property that is distinct from an injury to the corporation and therefore have standing to maintain a *nonderivative* RICO action." *Crocker v. FDIC*, 826 F.2d

347, 349 (5th Cir.1987), *cert. denied,* 485 U.S. 905, 108 S.Ct. 1075, 99 L.Ed.2d 235 (1988). An individual indirectly injured by a RICO violation cannot maintain a RICO action in his or her own name, since his or her claims are derivative of the directly injured party's claims; "an indirectly injured party should look to the recovery of the directly injured party, not to the wrongdoer, for relief." *Carter v. Berger,* 777 F.2d 1173, 1176 (7th Cir.1985).[5]

■■■ In general,[6] "wrongs committed by a bank's officers or directors that injure all depositors and creditors alike create a liability which is an asset of the bank itself and for which only the bank or its receiver may recover." *In re Longhorn Securities Litigation,* 573 F.Supp. 255, 272 (W.D. Okla.1983), *citing Adato v. Kagan,* 599 F.2d 1111, 1117 (2d Cir.1979). Under such circumstances, "[t]he damage to depositors is indirect only, and it is generally recognized that for such matters a depositor has no direct and individual right of action against a director." *Michelsen v. Penney,* 10 F.Supp. 537, 539 (S.D.N.Y.1934). *See* 1 Michie, *Banks and Banking,* Ch. 3, § 69, at 479 (1986) ("where the amount for which the officers and directors may be liable results from matters affecting all creditors, they constitute assets of the corporation for the benefit of all depositors and creditors, and suit therefor must be brought by the bank or its receiver"); *FDIC v. Renda,* 692 F.Supp. 128, 137 (D.Kan.1988) ("causes of action for negligence or wrongdoing by officers, directors, or employees of a failed institution belong to the receiver of the institution and may not be brought by cred-

---

**5.** Courts consistently have required individual plaintiffs to assert nonderivative claims of individual direct injuries to recover under RICO. *See, e.g., Crocker,* 826 F.2d at 348–353 (shareholders' claim under RICO that defendants' action caused shareholders' stock to decline in value was derivative and could not be maintained by shareholders individually); *Rand v. Anaconda–Ericsson, Inc.,* 794 F.2d 843, 849 (2d Cir.), *cert. denied,* 479 U.S. 987, 107 S.Ct. 579, 93 L.Ed.2d 582 (1986) (shareholder plaintiffs could not maintain RICO action because action belonged to corporation: "[a]ny decrease in value of plaintiffs' shares merely reflects the decrease in value of the firm as a result of the alleged illegal conduct"); *Carter,* 777 F.2d at 1174–1176 (individual taxpayers could not maintain RICO suit to recover taxes Cook County lost through defendant's alleged fraud because "[t]he taxpayers' injury derives from the County's"); *Warren v. Manufacturers National Bank of Detroit,* 759 F.2d 542, 544 (6th Cir.1985) (individual shareholder could not maintain RICO action for alleged defrauding of corporation by bank because "the shareholder's rights are merely derivative and can be asserted only through the corporation") (*quoting Stevens v. Lowder,* 643 F.2d 1078, 1080 (5th Cir.1981)); *Klapper v. Commonwealth Realty Trust,* 657 F.Supp. 948, 953 (D.Del.1987) (stating "the requirement of direct injury is the gravamen of RICO standing.... a shareholder of a corporation does not suffer direct injury merely when the corporation itself is harmed.")

**6.** Both *Blank Rome* and the *Popkins* contend that Florida state law determines whether the *Popkins* have standing to maintain their RICO claim, relying on *Crocker,* 826 F.2d at 349–352 ("whether this action is derivative or not is governed by Mississippi state law"). But a num- ber of courts have assumed that federal law determines whether a plaintiff has standing under RICO without explicitly so holding. *See Rand,* 794 F.2d, at 849; *Carter,* 777 F.2d, at 1174–1176; *Warren,* 759 F.2d, at 544; *Klapper,* 657 F.Supp., at 953–954.

I hold that federal common law determines whether a RICO action is derivative, and therefore, whether a depositor has standing to maintain the RICO action. I also find, however, that the same standing requirement of individual direct injury would apply under either Florida or federal common law. Under Florida law, an action is derivative "if the gravamen of the complaint is injury to the corporation or to the whole body of its stock or property and not injury to the plaintiff's individual interest." *Alario v. Miller,* 354 So.2d 925, 926 (Fla.Dist.Ct. App.1978) (*quoting* 19 Am.Jur.2d *Corporations* § 528 (1965)). Accordingly, "a stockholder may bring a suit in his own right to redress an injury sustained directly by him, and which is separate and distinct from that sustained by other stockholders. If, however, the injury is primarily against the corporation, or the stockholders generally, then the cause of action is in the corporation and the individual's right to bring it is derived from the corporation." *Citizens National Bank v. Peters,* 175 So.2d 54, 56 (Fla.Dist.Ct. App.1965).

Although neither the parties nor the Court have found cases interpreting Florida law which discuss derivative actions asserted by depositors of a bank, I agree with the parties that Florida law would adopt the rule of other jurisdictions and require a depositor plaintiff to allege an individual direct injury to have standing. As discussed *infra,* depositors must allege an individual direct injury to have standing under federal common law.

itors, depositors, or shareholders").[7]

■ So, for example, the *Longhorn* Court dismissed claims by depositor plaintiffs that the negligence of the bank's directors caused the bank to fail and injured the plaintiffs:

> [the plaintiffs] allege that the board had a duty to oversee Penn Square Bank's operations, that it breached that duty by ignoring repeated warnings by the Comptroller of the Currency and by failing to implement remedial measures to avert the Bank's ultimate failure, and that but for this breach the conspiracy to defraud the plaintiffs could not have been executed. The first two allegations are, in effect, that the board was negligent and that its negligence caused the bank to fail. Those allegations are patently insufficient to state a direct claim for relief. The wrongs alleged support a claim, but that claim is an asset of the failed Bank and its receiver, not of the plaintiffs here. The last allegation does not save the claim. Each one of the Bank's creditors and uninsured depositors could also claim that but for the board's negligence they would not have suffered their respective losses.

573 F.Supp. at 273 (citations omitted).

Similarly, in *Brandenburg v. Seidel*, 859 F.2d 1179 (4th Cir.1988), the Court of Appeals for the Fourth Circuit upheld the district court's *Burford* abstention from hearing claims brought by individual depositors against an insolvent bank's former officers and directors on the basis that the plaintiffs sought to assert derivative claims for the defendants' wrongdoing against the bank:

> The plaintiffs here seek damages from First Maryland's former officers and directors to compensate them for the losses they have suffered *as depositors* because of the defendant's (sic) mismanagement and misappropriation of First Maryland's assets—specifically, the interest they would have been paid on their First Maryland accounts had the defendants' misconduct not driven the institution into bankruptcy. But any action against First Maryland's officers and directors for misfeasance of their official duties properly belongs to MDIF as the thrift's receiver—and the representative of all its creditors—rather than to the depositors themselves, and the damages recoverable in such an action are assets of the institution itself, to be equitably distributed among all its creditors, not just its depositors.

859 F.2d, at 1191.[8]

*See also Michelsen*, 10 F.Supp., at 539 (holding that the depositor plaintiffs claimed only indirect injury and stated a derivative cause of action in alleging that the defendant bank director "willfully or negligently caused heavy losses to the bank, resulting in its insolvency and inability to pay depositors" and "took preferential payments.")

The Popkins therefore have no standing to recover from defendants on the basis that defendants' alleged negligence or

---

**7.** An individual depositor may bring a derivative action to recover for wrongs against the bank or thrift which have indirectly injured the plaintiff and other depositors, "but only after having made an unsuccessful demand on the bank or its receiver to bring suit." *Longhorn*, 573 F.Supp., at 272, *citing Landy v. FDIC*, 486 F.2d 139, 146–152 (3d Cir.1973), *cert. denied* 416 U.S. 960, 94 S.Ct. 1979, 40 L.Ed.2d 312 (1974). The Popkins do not seek to bring a derivative action, and have not alleged an unsuccessful demand on FSLIC, the receiver for New Sunrise, to bring suit. *See* Complaint.

**8.** The Popkins represent that the depositor plaintiffs in *Brandenburg* subsequently moved to file their complaint in state court and, after briefing concerning whether their claims were derivative of the receiver's, were granted leave to file their complaint. Plaintiffs' Reply to the Memorandum of FSLIC Regarding Summary Judgment, at 9. But this information, in and of itself, provides no basis for distinguishing or declining to follow *Brandenburg:* the state Court does not state the reasoning behind its decision in its Order; and the Popkins have not submitted the complaint or the motion in question to this Court, either of which might allow me to determine whether the state court faced the same question as the *Brandenburg* Court. In any event, even if the state court held, in effect, that the claims asserted in *Brandenburg* were not derivative, I would decline to follow the state court, since the *Brandenburg* Court's ruling is in accord with *Longhorn* and *Michelsen.*

wrongdoing caused either Old or New Sunrise to become insolvent, since any such claim belongs to FSLIC, the receiver for Old and New Sunrise.[9]

"Individual depositors may sue in their own right, however, if they have suffered a wrong that is distinctly theirs and not common to all." *Adato*, 599 F.2d, at 1117. *See Longhorn*, 573 F.Supp., at 272; *Michelsen*, 10 F.Supp., at 539–540; 1 Michie, *Banks and Banking*, Ch. 3, § 69, at 479 ("[t]he general rule seems to be that where a depositor or creditor of a bank has suffered a wrong not common to all creditors he may recover of the officers and directors responsible for it"). In *Adato*, for example, the Court found that the depositor plaintiffs had suffered an individual injury if, as plaintiffs alleged, the defendants had accepted deposits from the plaintiffs but treated the funds received as investments in several companies controlled by defendants, not as deposits in the bank:

> It can hardly be denied that, as of now, [the depositor plaintiffs] stand in a different position from that of the other depositors. Their right to be treated as depositors has been disputed by both the FDIC and Bank Leumi, and [the depositor plaintiffs] have a suit pending against the FDIC. ... If [the depositor plaintiffs] have a claim, it is not common to those of other depositors whose interests are represented by the FDIC.
>
> 599 F.2d, at 1117.

The Popkins allege in their complaint that defendants "directly or indirectly obtained money from the plaintiffs and class members by holding [Old] Sunrise out to federal and state regulators and the public,

through advertising and otherwise, as a legitimate, well run and secure savings and loan association, and by withholding contrary information from federal and state regulators and the public, including the plaintiffs and class members." [10] Complaint, ¶ 15. According to the Popkins, Old Sunrise advertisements, press releases, periodic reports and other publicly disseminated materials represented that Old Sunrise's business strategy and loans were sound and secure, and that Old Sunrise was profitable and would continue to be so. Complaint, ¶ 20.

■ Representations or omissions to a depositor regarding a thrift may either directly or indirectly injure the depositor, depending on the subject of the representations or omissions, as well as on how many other depositors or creditors received them. For example, the depositor plaintiffs in *Douglass v. Dawson*, 190 N.C. 458, 130 S.E. 195 (1925) alleged that the defendants failed to perform their duties as directors under the bank's by-laws and state law, made large loans on inadequate security, and thereby caused the bank to become insolvent. According to the plaintiffs, although they knew the bank was insolvent, the defendants made false statements to the state corporation commission and published false advertisements in newspapers showing the bank to be solvent. One of the plaintiffs allegedly relied on these statements and advertisements when making her deposit, which was lost when a receiver was appointed for the bank. 130 S.E., at 196.

The *Douglass* Court held that these allegations were of a wrong to the bank which

---

**9.** As discussed *infra*, the Popkins' complaint does not assert such a claim, but rather alleges that the defendants attracted deposits from the Popkins and others by misrepresentations and omissions regarding Old Sunrise's financial condition and defendants' management of Old Sunrise. To the extent the Popkins argue in their Memorandum in Opposition to Motions for Summary Judgment that they assert claims that defendants' wrongdoing caused New Sunrise's insolvency, such claims are derivative, and cannot be asserted by the Popkins.

In Exhibit B to Plaintiffs' Memorandum in Opposition to Motions for Summary Judgment,

counsel for the Popkins seeks discovery under Rule 56(f) concerning six issues, all related to defendants' alleged misconduct and its relationship to New Sunrise's demise. But because any claim that defendants' misconduct caused New Sunrise to become insolvent belongs to FSLIC as receiver for New Sunrise, this affidavit sets forth no basis for denying summary judgment or continuing discovery under 56(f).

**10.** Within the Popkins' Complaint, the term "Sunrise" is used to refer to Sunrise Savings and Loan Association of Florida, referred to as "Old Sunrise" in this Memorandum. Complaint, ¶ 4.

only indirectly injured the depositor plaintiffs:

> The loss of the deposit, as evidenced by the certificate, was caused by the insolvency of the bank. It is alleged that the insolvency of the bank was the result of the failure and neglect of defendants to perform the duties imposed upon them, as directors, by the bylaws, rule and regulations of the corporation, and by the laws of the state. ... [T]he failure or neglect to perform these duties was a wrong, primarily to the corporation.

.    .    .    .    .

> The facts alleged in the complaint do not show any wrong peculiar to plaintiffs or to Miley Jones, to whom the certificate of deposit was issued. There is no allegation that defendants or either of them made any representation to her individually as to the condition of the bank, prior to the making of the deposit, originally, or while the same was in the bank. The statements alleged to have been published, showing that the bank was solvent and worthy of credit were not made to Miley Jones alone but, as alleged in the complaint, to Miley Jones and the public. The loss which plaintiffs have sustained by reason of the insolvency of the bank is an injury to them, in common with other creditors and depositors of the Farmers' Bank & Trust Company.

130 S.E., at 199.

Thus, when a depositor alleges that the defendant failed to disclose that the bank or thrift was insolvent as a result of defendant's negligence or wrongs against the bank or thrift, the depositor has alleged a derivative claim. In such a case, the depositor claims, in essence, that the defendant failed to inform the depositor that the defendant had injured the bank or thrift, so that the depositor's injury, like that of other creditors, is an indirect result of the defendant's wrongdoing to the bank or thrift. In addition, when a depositor claims to have been defrauded by a misrepresentation or omission in a statement directed to the general public, he or she does not allege a wrong that is distinctly the depositor's and not common to other depositors or creditors, and therefore claims an indirect injury.

To the extent the Popkins claim that defendants failed to reveal their wrongdoing against Old or New Sunrise to depositors, then, they have asserted a derivative claim belonging to FSLIC, receiver for Old and New Sunrise. As in *Douglass,* the Popkins' complaint alleges that defendants failed to inform depositors and the public that their mismanagement and self-dealing had injured Old Sunrise and made it unsafe. The Popkins allege that defendants "withheld from state and federal regulators and the public, including plaintiffs and class members" information that defendants had caused Old Sunrise to pursue risky and unsafe loan strategies, certain defendants engaged in self-dealing transactions with Old Sunrise, and that defendants caused Old Sunrise to misrepresent the quality of its loan portfolio. Complaint, ¶¶ 21–25, 28. These alleged actions, if they occurred, directly injured Old or New Sunrise; defendants' alleged failure to inform depositors that they had engaged in these actions only indirectly injured the depositors.

In their Opposition to Blank Rome's Motion for Summary Judgment, the Popkins argue that they have not asserted derivative claims because they "lost a portion of their *personal* savings" and seek to enforce a purportedly individual "right to receive the principal and/or interest lost from *their own* accounts and certificates of deposit." Plaintiffs' Memorandum in Opposition to Motion of Blank Rome for Summary Judgment, at 10; *see also,* at 2, 4, 5, 7. But when determining if a depositor's claim is derivative, the relevant question is whether the depositor has suffered an individual injury, not whether the depositor has lost a portion of his or her "personal" savings. For example, in *Longhorn, Michelsen* and *Douglass,* each of the depositor plaintiffs whose claims were dismissed as derivative had suffered losses of "personal" savings from his or her own account. *Longhorn,* 573 F.Supp., at 272–273; *Michelsen,* 10 F.Supp., at 538–539; *Douglass,* 130 S.E., at 196.

The Popkins also allege that defendants withheld information that Old Sunrise "was not financially secure," and represented that Old Sunrise had a positive net worth when it "was, in fact, insolvent". Complaint, ¶¶ 21, 22(e), 28(a). In particular, they claim that Old Sunrise's advertising, which conveyed the misleading impression that Old Sunrise "was a reputable savings and loan association offering attractive interest rates together with safety", was directed specifically at depositors, not stockholders or creditors. Plaintiffs' Memorandum in Opposition to Motion of Blank Rome for Summary Judgment, at 3.

Although some cases suggest that a depositor may state a claim of individual injury if he or she alleges simply that a defendant misrepresented a bank or thrift as being solvent, or accepted the plaintiff's deposit with the knowledge that the bank or thrift was insolvent,[11] there are two reasons why the Popkins' allegations of representations and omissions about the financial condition of Old Sunrise might not state a recognizable claim of individual injury. First, as discussed above, a depositor's injury suffered due to representations or omissions made to the general public is indirect, since other depositors and creditors would have suffered the same wrong. The Popkins' complaint alleges that "defendants fraudulently and deceitfully withheld from state and federal regulators and the public, including [the] plaintiffs and class members" information concerning Old Sunrise's financial condition; it also alleges that misrepresentations and omissions about Old Sunrise's financial condition were made after Old Sunrise entered a supervisory agreement with FSLIC in 1984 as part of a "campaign of misleading the public." Complaint, ¶¶ 21, 22, 28.[12]

In addition, recognition of such a claim might well disrupt the federal regulatory receivership scheme established to ensure efficient and equitable distribution of Old and New Sunrise's assets among all of their creditors. The Court of Appeals for the Tenth Circuit recently addressed this issue in *Downriver Community Federal Credit Union v. Penn Square Bank*, 879 F.2d 754, 762 (10th Cir.1989). In *Downriver*, depositor plaintiffs sought to impose a constructive trust on an insolvent bank's assets on the basis that the bank "had knowingly or recklessly induced their deposits through issuing financial statements

---

**11.** In *Bane v. Powell*, 192 N.C. 387, 135 S.E. 118 (1926), the plaintiff alleged that "defendants, as officers and directors, knew that [the] bank was then and had been for a long time insolvent, unable to meet its obligations, and unsafe. With such knowledge, defendants wrongfully received or wrongfully permitted employees of the bank to receive [plaintiff's] deposit." 135 S.E., at 119. The Court held that this allegation stated a claim of an individual direct injury suffered by the depositor plaintiff:

It is not alleged in the complaint in the instant action that defendants, as its officers and directors, by their negligence or wrongful acts, caused the bank to become, or to be, insolvent, as was the case in *Douglass v. Dawson*. The bank suffered no loss by the wrongful act of defendants, with respect to the reception of plaintiff's deposit, and therefore has sustained no damage.... Plaintiff's loss, resulting from defendant's wrongful act, was the bank's gain.

135 S.E., at 119.

*See also Michelsen*, 10 F.Supp., at 539–540 (holding that "allegations of false representations made by the defendant as to the bank's solvency, known by him to be false and relied on by the plaintiffs and depositors generally" stated a nonderivative cause of action).

**12.** In their Memorandum opposing Blank Rome's motion, the Popkins claim that misrepresentations that Old Sunrise was a "legitimate, well run and secure savings and loan association" occurred in Old Sunrise advertisements aimed specifically at depositors. Memorandum in Opposition to Motion of Blank Rome for Summary Judgment, at 3. But I will not address the question whether representations or omissions in advertisements directed toward prospective depositors directly injure persons who make deposits in reliance upon them, since I find that the Popkins cannot establish that they suffered any injury due to representations concerning Old Sunrise's financial condition. *See infra*.

Counsel for the Popkins has filed an affidavit pursuant to Rule 56(f) seeking discovery relating to Old Sunrise's advertisements. Plaintiffs' Memorandum in Opposition to Motion of Blank Rome for Summary Judgment, Exhibit C. Since I find that the Popkins suffered their losses on their New Sunrise deposits, not on their Old Sunrise deposits, this affidavit sets forth no basis for denying summary judgment or continuing discovery under 56(f).

that materially mistated the bank's financial condition." 879 F.2d, at 757. The Court stated that "[t]hose who deposit funds after a bank is hopelessly insolvent can show a specific act of fraud that affects only them, and therefore they have a superior equitable position over others who deposited funds prior to hopeless insolvency with a hope or belief in the bank's future ability to repay the deposit." 879 F.2d, at 762. Nevertheless, the Court declined to recognize the plaintiffs' claim because it would disrupt the federal regulatory receivership scheme:

> Even in the case of hopeless insolvency, however, full restitution may be denied when it would sufficiently disrupt the orderly administration of the receiver's estate or otherwise result in inequitable treatment to other similarly situated depositors.... We do not think that Congress would have intended to deluge the FDIC with the potentially crushing weight of claims for preferences on behalf of all the uninsured depositors who could allege that they relied upon misleading information that was available to all depositors. Allowing such a preference to be based upon a "race of diligence" among creditors would make "the equality promised to them by the [National Bank Act] a mere mockery."
>
> 879 F.2d, at 763–764 (citations omitted).

■ I need not determine whether the Popkins' allegations that defendants misrepresented Old Sunrise's financial condition state a recognizable claim of individual injury, however, because undisputed facts establish that the Popkins have suffered no losses as a result of any such misrepresentations or omissions, and therefore that summary judgment is appropriate for any RICO claim the Popkins might assert based solely on these allegations. It is undisputed that neither the Popkins nor any other depositors lost any money when Old Sunrise was declared insolvent. *See supra,* n. 4. After New Sunrise was declared insolvent in September, 1986, the Popkins suffered their loss on certificates of deposit

they had purchased from New Sunrise on April 11, 1986. The Popkins do not dispute that the defendants in this action had no connection to New Sunrise, and they do not allege that the defendants ever made any representations regarding the financial condition of New Sunrise. *See* Memorandum of FSLIC in Support of Certain Defendants' Motions for Summary Judgment, at 13–14 (noting that New Sunrise had different management, directors, outside legal counsel and independent auditors than Old Sunrise).

The Popkins argue that their purchase of New Sunrise certificates on April 11, 1986 was only a "rollover" of the certificates they had purchased from Old Sunrise, not a new investment in New Sunrise. But it is undisputed that when the Popkins' former Old Sunrise certificates matured on April 11, 1986, the Popkins could have withdrawn without penalty the full amount of their deposit plus interest and invested the funds elsewhere. Indeed, George Popkin testified in his deposition that on April 11, 1986, he and his wife withdrew from New Sunrise the interest accrued on the certificates and deposited it in one or more other banks. Popkin Deposition, at 34–35. Under these circumstances, the deposit on which the Popkins suffered their losses must be considered to have occurred on April 11, 1986, when the Popkins purchased their New Sunrise certificates. As a result, the Popkins suffered no losses due to the insolvency of Old Sunrise, and they cannot maintain an action on the basis of any representations or omissions defendants allegedly made concerning the financial condition of Old Sunrise.

■ The Popkins and other New Sunrise depositors are not left without a remedy for their losses. To the extent that FSLIC, the receiver for New Sunrise, has not already asserted the claims made by the Popkins in this action, the Popkins or other depositors may demand FSLIC to pursue these claims, and may file a derivative action if FSLIC refuses. *See supra,* n. 7.[13] In addition, pursuant to the agree-

---

**13.** I express no opinion as to whether applicable statutes of limitations, laches or other doctrines

ments under which Old Sunrise's claims against its officers, directors, attorneys, accountants and appraisers were assigned to FSLIC Corporate, New Sunrise depositors and other creditors will receive distributions from FSLIC Corporate's recoveries against these parties after certain other expenses and claims are paid. *See* Memorandum of FSLIC in Support of Certain Defendants' Motions for Summary Judgment, Exhibit D (Receiver's Agreement Between FSLIC Receiver and FSLIC Corporate), Exhibit E (Purchase Agreement Between FSLIC Corporate and New Sunrise), Exhibit F (Assignment and Agreement Between FSLIC Corporate and New Sunrise); 12 C.F.R. §§ 569a.7, 569c.11 (1989) (setting forth priority of claims against receiver). FSLIC states that it anticipates that as liquidation of New Sunrise assets continues, depositors will receive distributions in addition to the 43.45% of their uninsured deposits they already have received in accordance with the receivership plan. Memorandum of FSLIC in Support of Certain Defendants' Motions for Summary Judgment, at 13.

It is true that FSLIC has not guaranteed that the Popkins and other depositors will recover all or substantially all of their losses through the receivership scheme. Plaintiffs' Reply to the Memorandum of FSLIC Regarding Summary Judgment, at 10–11. Nevertheless, FSLIC has guaranteed that the remaining assets of New Sunrise will be distributed in an equitable manner among the depositors and other creditors of New Sunrise, and that depositors will recover the same percentage of their losses

as other unsecured creditors in their class under the regulatory receivership scheme. The Popkins cannot establish that they have suffered an individual injury distinct from that suffered by New Sunrise's other creditors, and therefore are not entitled to the priority over other creditors' claims which they would receive if they successfully pursued the claims they have asserted in this action.[14] Defendants' motions for summary judgment will be granted, and the Popkins' complaint will be dismissed.[15]

bar the Popkins or other Old or New Sunrise depositors from making the required demand for suit on FSLIC or from filing a derivative suit at this time.

**14.** Since jurisdiction over the Popkins' state law claims is pendent to the RICO claim, I will dismiss them as well. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). I therefore do not reach the questions whether the Popkins' state law claims are derivative, and whether the Popkins have standing to pursue them.

**15.** Although only some defendants have moved for summary judgment, *see supra* n. 2, I find that the grounds which make summary judg-

ment appropriate on the Popkins' claims against the moving defendants are equally applicable to the Popkins' claims against the non-moving defendants. Accordingly, I will grant the motions for summary judgment, will dismiss the Popkins' complaint as to all defendants in the Depositors case, and will deny the Popkins' motion for class certification as moot. *See Zimmerman v. HBO Affiliate Group*, 834 F.2d 1163, 1169 (3d Cir.1987) (upholding district court's dismissal of a motion for class certification as moot because it dismissed the putative class representative's complaint for failure to state a cause of action under RICO, stating that "to be a class representative on a particular claim, the plaintiff must himself have a cause of action on that claim").