## FAGAN v. WHIDDEN et al.
### No. 6467.

Circuit Court of Appeals, Fifth Circuit.
March 26, 1932.

Rehearing Denied April 23, 1932.

D. C. McMullen, of Tampa, Fla., for appellant.

Claude L. Gray, of Orlando, Fla., and L. Grady Burton, of Wauchula, Fla., for appellees.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

From a decree charging funds of a failed bank in the possession of a receiver with a trust for the amount of the savings deposit of A. J. Whidden, deceased, this appeal is prosecuted.

The bill alleged, and the master found in accordance with the evidence, that the officers of the bank had, for the fraudulent purpose of concealing the existence of the deposit, and preventing its withdrawal, falsely stated to representatives of the deceased that he had no savings account with the bank. That but for these practices, keeping the existence of the deposit concealed from appellees, they would have withdrawn the funds from the bank before it failed.

It was specifically found that Whidden had for a long time prior to his death been a customer of the bank, carrying deposits in both general and savings accounts with it. The savings account in question had by additional deposits and credits of interest increased from June 1, 1921, to June 22, 1929, when the claim in suit was filed with the receiver, from $5,560.70 to $8,896.75. On March 6, 1928, Whidden was adjudged insane, and guardians were appointed of his person and property. These guardians undertook to ascertain the nature and condition of the accounts and business of their award with the bank, the deposits that he had there and the property they held for him, and made general and specific inquiry of the officers of the bank; they sought and obtained an inventory and specifically inquired whether Whidden had a savings account. The inventory furnished showed no savings account, and the officer to whom the inquiry was referred, having full knowledge that his statement was false, advised that Whidden had no savings account.

On April 2, 1928, Whidden died testate, and appellees were appointed his executors. The guardians and executors relied upon the statements and representations of Chapman for the bank that there was no savings account there, and they did not ascertain that he had one until the bank had been placed in the hands of a receiver. If they had known of its existence, they would have, before the bank failed, withdrawn it, to deposit it in the designated depository, or distribute it as required by the will, as they had done all other funds of their testator which had come to their knowledge.

The master concluded that since the result of the fraudulent acts and concealments of the bank and its officers, if given effect to, would be in effect to permit the bank to tender a now insolvent for a then solvent debtor, and thus defraud appellees of the moneys they would then have received, the matter

632

must be looked on as though the deposit had in fact been withdrawn, the relation of debtor and creditor terminated, and a new relation of trustee for a special fund created. The District Court adopted the master's findings both of law and of fact. The single question presented here is whether the legal conclusion was right. If it was, the judgment should be affirmed. If it was not, it should be reversed. We think it was wrong.

That the officers of the bank have acted badly, and that for the damage caused by their fraudulent conduct they may be held personally to account, goes without saying. It is quite another thing, however, to say that the fraud of an officer of the bank, by which a depositor is prevented from carrying out a purpose to cease being a creditor of the bank converts him from a creditor of the bank into an owner of a specific amount of the bank's funds so that thereafter the bank is, as to that amount, not his debtor, but his trustee.

We have held in Davis v. McNair, 48 F. (2d) 494, and in Dixon v. Hopkins, 56 F.(2d) 783, that by agreement between the parties a general deposit in a bank may be converted into a special deposit, in the nature of a trust, toward which the bank occupies the position of a trustee, and that equity will execute and make effective an agreement between the bank and the depositor that funds theretofore held in a general deposit shall be converted into moneys of the depositor to be held by the bank as his and appropriated by it for him to a special use. Other courts have taken the same view. Schumacher v. Harriett (C. C. A.) 52 F.(2d) 818; Schuhmacher v. Brinson (C. C. A.) 52 F.(2d) 821; Bryan v. Coconut Grove (Fla.) 132 So. 481.

But this is not to hold that equity will, because a fraud has been committed either by concealing the existence of a deposit or the condition of the bank, set up, in order to enforce it, an agreement for a change from a general to a special deposit which was not in fact made. All that has occurred here is that a debtor bank has put off payment of its debt until it has become unable to pay it, by falsely stating to the representatives of the depositor that the debt did not exist. False and reprehensible though this conduct was, and liable as its authors undoubtedly are for the damage which it caused,

its factual and legal character and consequences cannot, because insolvency has ensued, by any kind of equitable intendment be converted from the false statement that the debt did not exist, into the true statement that it did, and an agreement that it would be regarded as withdrawn as a general and redeposited as a special deposit to be held by the bank not as its own money, for the amount of which it stands debtor to the depositor, but as the depositor's money of which it is trustee. Mallett v. Tunnicliff (Fla.) 136 So. 346; State v. Banking Corporation, 77 Mont. 134, 251 P. 151; Venner v. Cox (Tenn. Ch. App.) 35 S. W. 769; Farmers' & Merchants' v. Carper, 202 Iowa, 859, 211 N. W. 532, 51 A. L. R. 910.

Attractive in its appeal and salutary in its operation as is the doctrine that equity will convert into a trustee ex maleficio one who has acquired property of another, and unlawfully converted it to his own use contrary to agreement, express or implied, it is essential to its application that the property of one has been so misapplied by another. Especially should this essential to the fixing of a trust be kept in mind where the administration of failed banks is in question, for the trust, if enforced, operates not against the fraud doer, but against others equally innocent, and, absent the trust, equally entitled with claimant to payment from the available funds. So situated, it was incumbent upon appellees, claiming a preference right upon the funds of the bank on the ground that the bank held them in trust for the deceased as his funds, to show the title of deceased to those funds. All that has been shown here is that the deceased loaned money to the bank on a savings account. Not only has no agreement changing the status of the account from a general to a special deposit been shown, but the testimony prevents the finding that appellees and the bank arrived at such an agreement as to it, for it shows that its very existence was, by denial, concealed from appellees. The fact of this deceit cannot change appellees from creditors of the bank to owners of its funds. The bank stands as to them just as it does to its other creditors, their debtor, not their trustee. Cunningham v. Brown, 265 U. S. 1, 44 S. Ct. 424, 68 L. Ed. 873.

The judgment is reversed, with directions to dismiss the bill.