### In re SUNRISE SECURITIES LITIGATION.

George POPKIN and Anne Popkin

v.

Robert C. JACOBY, George Greenberg, Nathaniel J. Jacobs, Alan B. Keiser, Robert E. Logsdon, Lake Lytal, Frank Shaw, Robert T. Siemon, Bernard Simonson, William C. Frame, Sheila Evelyn, M. Kalman Gitomer, Michael D. Foxman, Robert A. Calsin, Joseph C. Taber, Deloitte Haskins & Sells, and Blank Rome Comisky & McCauley,

George and Anne Popkin, Appellants.

No. 89–2116.

United States Court of Appeals, Third Circuit.

Argued May 17, 1990.

Decided Oct. 17, 1990.

John G. Harkins, Jr. (argued), Jeffrey C. Hayes, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for appellees, Blank, Rome, Comisky & McCauley.

Rudolph Garcia, David R. Moffitt, Saul, Ewing, Remick & Saul, Philadelphia, Pa., for appellee Bernard Simonson.

S. Michael Levin, Edwards & Angell, Providence, R.I., for appellee M. Kalman Gitomer.

Perry S. Bechtle, LaBrum & Doak, Philadelphia, Pa., for appellee Michael D. Foxman.

Bruce A. Zimet, Bruce A. Zimet, P.A., Fort Lauderdale, Fla., for appellee William C. Frame.

James M. Miller, Akerman, Senterfitt & Eidson, Miami, Fla., for appellee Joseph C. Taber.

Alan J. Davis, Robert McL. Boote, Wolf, Block, Schorr & Solis–Cohen, Philadelphia, Pa., for appellee Deloitte, Haskins & Sells.

Stephen H. Glickman, Zuckerman, Spaeder, Goldstein, Taylor & Kolker, Washington, D.C., for appellee Robert C. Jacoby.

Donald T. Bucklin, Scott T. Kragie, Margaret A. Jennings, Squire, Sanders & Dempsey, Washington, D.C., for amicus curiae The Federal Deposit Ins. Corp., etc. on behalf of all appellees.

Before MANSMANN and SCIRICA, Circuit Judges and STANDISH, District Judge.*

## OPINION OF THE COURT

SCIRICA, Circuit Judge.

In this appeal, we consider the legal limitations on the rights of depositors to assert individual RICO claims against the directors, officers, auditors, and outside counsel of an insolvent savings and loan association, rather than to recover their losses through the receiver's actions on their behalf, or by way of a derivative suit. The plaintiffs in this class action, former depositors of Sunrise Savings & Loan Asso-

Arthur M. Kaplan (argued), Allen D. Black, Fine, Kaplan & Black, Philadelphia, Pa., for appellants.

Amy B. Ginensky (argued), Robert C. Heim, Jan P. Levine, Dechert, Price & Rhoads, for appellees Alan B. Keiser, Nathaniel B. Jacobs, Robert E. Logsdon, Robert T. Siemon, George Greenberg and Lake Lytal.

* The Honorable William L. Standish, United States District Judge for the Western District of Pennsylvania, sitting by designation.

ciation of Florida ("Old Sunrise"), a Florida corporation, and Sunrise Savings & Loan Association ("New Sunrise"), a federal mutual association, appeal the dismissal of their complaint against the former directors, officers, attorneys, and auditors of Old Sunrise. The complaint alleges violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968 (1988), as well as pendent state law claims arising from the insolvency and federal takeover of Old and New Sunrise.

The district court granted summary judgment for defendants after finding that plaintiffs could not establish that defendants' misrepresentations regarding the financial condition of Old Sunrise caused plaintiffs' losses. Moreover, the district court found that to the extent plaintiffs had alleged that defendants' wrongdoing caused the demise of New Sunrise or that defendants misrepresented and failed to reveal that they had injured Old or New Sunrise, plaintiffs had asserted a derivative claim that could not be brought individually. *In re Sunrise Securities Litigation*, 108 B.R. 471, 475 (E.D.Pa.1989). We hold that this entire claim is derivative and cannot be brought as an individual RICO action. Therefore, we will affirm the district court's grant of summary judgment.

## I.

On October 11, 1984, plaintiffs Anne and George Popkin purchased five $100,000 six-month certificates of deposit from Old Sunrise. Popkin claims that they purchased the certificates after learning of Old Sunrise's favorable interest rate in a Florida newspaper advertisement and after confirming that the certificates were insured by the Federal Savings and Loan Insurance Corporation ("FSLIC").[1] To ensure that their entire deposit would be protected under the $100,000 FSLIC insurance limit, the

Popkins placed the five certificates in separate accounts under the names of George Popkin, Anne Popkin, George Popkin in trust for Anne Popkin, Anne Popkin in trust for George Popkin, and George or Anne Popkin. Popkin asserts that at the time of purchase, he requested a financial statement for Old Sunrise and that he received a statement for the period ending June 1983. On April 11, 1985, the certificates matured. The Popkins withdrew the interest and rolled over the principal into five one-year $100,000 certificates.

On July 18, 1985, the Federal Home Loan Bank Board ("Bank Board") declared Old Sunrise insolvent, appointed FSLIC as receiver, and organized New Sunrise, the federal mutual association to which Old Sunrise's assets and liabilities were transferred. Defendants were not involved in the establishment or operation of New Sunrise. A new board of directors, auditor, and general counsel were appointed, and Ameri-First Federal Savings and Loan Association was hired as management advisor. Plaintiffs have acknowledged that none of the Old Sunrise depositors lost any portion of their Old Sunrise deposits, including those whose deposits exceeded the insurance limit of $100,000 prescribed under 12 C.F.R. § 564.3. *In re Sunrise Securities Litigation*, 108 B.R. at 474 & n. 4.

On July 19, 1985, The Wall Street Journal and The New York Times ran articles on the Bank Board's takeover and the financial problems that led to Old Sunrise's failure. The Wall Street Journal reported that the Bank Board "will give the new Sunrise an undisclosed amount of promissory notes sufficient to make the thrift technically solvent ... in exchange for IOUs that don't have to be repaid until the thrift returns a profit." The New York Times reported that the Bank Board, through FSLIC, "would issue promissory

---

1. In the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), Pub.L. No. 101–73, § 401, 103 Stat. 183, 354–57 (1989), Congress dissolved FSLIC and delegated most of its functions to the Federal Deposit Insurance Corporation ("FDIC"). *See* H.R.Rep. No. 54(I), 101st Cong., 1st Sess. 355, 439, *reprint-ed in* 1989 U.S.Code Cong. & Admin.News 81, 151, 235. By order dated February 1, 1990, FDIC was substituted for FSLIC in this litigation. *See In re Sunrise Securities Litigation*, MDL No. 655, 131 F.R.D. 450, 452 n. 1 (E.D.Pa. 1990).

notes to the new thrift institution to insure it was financially solvent."

In a letter dated July 30, 1985, the president of New Sunrise informed depositors of the insolvency of Old Sunrise, the transfer of accounts to New Sunrise, and the retention of AmeriFirst as management advisor. The letter stated that the Bank Board had provided New Sunrise "with the financial resources to insure its stability and solvency" and that "the result of the Bank Board's action is a stable, solvent Sunrise Savings." Popkin claims that he neither saw the newspaper articles nor received the July 30 letter. He contends that he remained unaware of Old Sunrise's insolvency until July 1986.

In the meantime, on April 11, 1986, the Popkins' Old Sunrise certificates matured. The Popkins withdrew their interest and rolled over the principal into five $100,000 one-year certificates with New Sunrise. They elected to receive their interest quarterly rather than at maturity. Nonetheless, they did not withdraw the interest when it was posted the following quarter.

On September 12, 1986, the Bank Board declared New Sunrise insolvent and temporarily froze all accounts. In October 1986, FSLIC transferred the insured deposits to Beach Federal Savings and Loan Association and issued certificates of claim for the uninsured interest that had accrued between April 1986 and September 1986 on each of the Popkins' five certificates. Since July 1988, FSLIC has made three partial distributions of proceeds to New Sunrise depositors, including the Popkins, amounting to a total of 43.45% of their

uninsured deposits. At the time of the district court decision, the Popkins had outstanding claims for interest of $1,878.92 on each certificate, totaling $9,394.60. *Id.* at 475.

The Popkins filed this action in February 1988 on behalf of all depositors with interest-bearing accounts at Old Sunrise on July 15, 1985 seeking recovery of their uninsured deposits.[2] In their complaint, they allege that defendants violated RICO, 18 U.S.C. § 1962(a), (c), and (d), by conducting the affairs of Old Sunrise through a pattern of racketeering activity consisting of numerous acts of mail, wire, and securities fraud, and the interstate transportation and receipt of fraudulently-obtained funds. According to plaintiffs, defendants attracted depositors "by holding Sunrise out to federal and state regulators and the public ... as a legitimate, well-run and secure savings and loan association" and by promising attractive interest rates in "advertisements, press releases, periodic reports and other publicly disseminated materials." Complaint ¶¶ 15, 20. In particular, plaintiffs contend that defendants failed to disclose that Old Sunrise was neither financially secure nor well-managed and that defendants had engaged in self-dealing. *Id.* ¶¶ 22–25. Plaintiffs allege that Old Sunrise's insolvency and plaintiffs' losses resulted from defendants' RICO violations. *Id.* ¶¶ 43, 44.

Certain defendants moved for summary judgment and the district court granted the motion and dismissed the complaint as to all defendants.[3] The district court stated that plaintiffs could not recover on the

2. The depositors' case is one of three groups of claims that have been consolidated for pretrial proceedings in this multidistrict litigation, MDL No. 655 (E.D.Pa.). *See In re Sunrise Securities Litigation,* 108 B.R. at 473 n. 1. A consolidated class action suit on behalf of all Old Sunrise shareholders was filed on July 25, 1986. FSLIC filed suit against virtually the same defendants on September 2, 1986. *See In re Sunrise Securities Litigation,* 131 F.R.D. at 453. Under a Settlement and Joint Prosecution Agreement and Confidential Sharing Agreement, entered on July 9, 1987, FSLIC and the shareholder plaintiffs agreed to combine forces to share expenses and any recoveries from defendants. *Id.* at 453. On May 29, 1990, over the objections of the

Popkins, the district court approved settlement agreements reached between the shareholder plaintiffs and three groups of defendants: the FDIC defendants (Old and New Sunrise, FDIC as receiver, the Bank Board); Blank, Rome, Comisky & McCauley (general counsel for Old Sunrise and several of its partners); and Robert Calsin and Sheila Evelyn, two of the Old Sunrise officers named as defendants. *Id.* at 461–63.

3. In light of the dismissal of the RICO claim, the district court dismissed the pendent state law claims and denied plaintiffs' motion for class certification as moot. *In re Sunrise Securities Litigation,* 108 B.R. at 482 n. 14 & n. 15.

theory that defendants' mismanagement caused the insolvency of either Old or New Sunrise because such a claim was derivative and belonged to FSLIC as receiver for both institutions.[4] *In re Sunrise Securities Litigation*, 108 B.R. at 477–78. Moreover, the court held that plaintiffs' claims based on the failure to disclose that mismanagement and self-dealing injured Old Sunrise also were derivative. *Id.* at 479. The court reasoned that, in essence, plaintiffs claimed that defendants failed to inform depositors that defendants had injured Old Sunrise. Thus, the depositors' injury was an indirect result of defendants' wrongdoing to Old Sunrise. In addition, the court concluded that allegations involving misrepresentations made in statements to the general public asserted a wrong that is common to all depositors and, therefore, constituted an indirect injury. *Id.* The court stated that an individual depositor may bring a derivative action to recover for injuries to the bank that indirectly injured depositors after making an unsuccessful demand on the institution or its receiver to bring suit. The court noted, however, that plaintiffs did not seek to bring a derivative suit nor did they allege an unsuccessful demand on the receiver. *Id.* at 477 n. 7.

While recognizing that claims based on misrepresentations of financial condition could, under certain circumstances, state a claim of individual injury, the court concluded that in this case, plaintiffs might not have stated such a claim because the injury they suffered was common to all depositors of Old Sunrise and because recognition of such a claim might disrupt the federal regulatory receivership scheme. *Id.* at 480. The district court declined to decide the question, however, because it concluded that the undisputed facts established that plaintiffs' injury did not result from misrepresentations or omissions concerning the financial condition of Old Sunrise. The court reasoned that plaintiffs suffered no loss when Old Sunrise was declared insol-

vent; rather, their loss occurred only on the New Sunrise certificates purchased in April 1986. Therefore, the court held that summary judgment was appropriate for any RICO claim that plaintiffs might assert based solely on these allegations. *Id.* at 481.

## II.

On appeal, plaintiffs contend that the district court erred in holding as a matter of law that defendants' misrepresentations of the financial condition of Old Sunrise were not the proximate cause of plaintiffs' injuries. Moreover, plaintiffs argue that the district court erred to the extent it held that plaintiffs' RICO action is derivative.

Our review of the district court's grant of summary judgment is plenary. We apply the standard the district court used initially. *Environmental Tectonics v. W.S. Kirkpatrick, Inc.*, 847 F.2d 1052, 1057 (3d Cir.1988), *aff'd*, — U.S. —, 110 S.Ct. 701, 107 L.Ed.2d 816 (1990). Summary judgment may be granted only when there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Once the moving party has identified those portions of the record that demonstrate the absence of a genuine issue, the nonmoving party must "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(e)).

To recover under RICO, a private plaintiff must demonstrate an injury "in his business or property by reason of a violation of [18 U.S.C. § 1962]." 18 U.S.C. § 1964(c). The Supreme Court has explained that the injury and causation requirements of § 1964(c) are aspects of

---

**4.** As the district court understood it, plaintiffs' complaint did not assert such a claim but rather alleged that defendants' misrepresentations induced plaintiffs to deposit money at Old Sunrise. The court stated that to the extent plain-

tiffs argued in their Memorandum in Opposition to Summary Judgment that they did assert that defendants' mismanagement caused the insolvency, such claims are derivative. *In re Sunrise Securities Litigation*, 108 B.R. at 478 n. 9.

RICO standing. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985) (plaintiff has standing only to the extent he has been injured by conduct constituting violation); *see Shearin v. E.F. Hutton Group, Inc.*, 885 F.2d 1162, 1164 (3d Cir.1989); *Brandenburg v. Seidel*, 859 F.2d 1179, 1187 (4th Cir.1988).

 Although both requirements are implicated in this appeal, we need not decide whether the district court erred in its causation analysis. Even if plaintiffs' losses could be traced to defendants' alleged misconduct, in substance, the complaint states a claim of injury to Old and New Sunrise and it is from this injury that plaintiffs' losses flowed. Therefore, we hold that the claim belongs in the first instance to the institutions through their receiver, and may be brought by plaintiffs only as a derivative claim, following an unsuccessful demand on the receiver.[5]

### A.

As a threshold matter, we must decide what law to apply in determining whether plaintiffs have stated a nonderivative claim of direct injury. According to the district court, a number of federal courts have assumed that federal law decides the question. Therefore, the district court held that federal common law applies in determining whether a RICO action is derivative. *In re Sunrise Securities Litigation*, 108 B.R. at 476 n. 6. On appeal, plaintiffs argue that Florida law controls.[6]

Plaintiffs base their claim on a federal statute and, therefore, the issue of standing is a federal question. This fact, however, does not render state law irrelevant.

*See Burks v. Lasker*, 441 U.S. 471, 477–78, 99 S.Ct. 1831, 1836–37, 60 L.Ed.2d 404 (1979). Plaintiffs were allegedly injured in Florida by the former directors, officers, auditors, and attorneys of a Florida corporation. "Corporations are creatures of state law," *Cort v. Ash*, 422 U.S. 66, 84, 95 S.Ct. 2080, 2090, 45 L.Ed.2d 26 (1975), and unless state law on the issue of the derivative nature of plaintiffs' claim is inconsistent with the federal policy underlying RICO, it should not be displaced simply because plaintiffs base their claim on a federal statute. *See Burks*, 441 U.S. at 478–79, 99 S.Ct. at 1837–38; *id.* at 486, 99 S.Ct. at 1841 (federal courts should apply state law—to extent it is consistent with federal policy—in deciding power of corporate directors to discontinue shareholders' derivative suit alleging violations of federal law); *cf. Morgan v. South Bend Community School Corp.*, 797 F.2d 471, 475 (7th Cir.1986) (state law applies to procedural matters in federal civil rights cases unless state rule is systematically hostile to federal interests, that is, unless "over the run of cases" state rule dramatically reduces incentive to comply with federal substantive rule). Absent inconsistency with federal policy, federal courts are relieved "of the necessity to fashion an entire body of federal corporate law out of whole cloth." *Burks*, 441 U.S. at 480, 99 S.Ct. at 1838. Therefore, to resolve the question, we must examine Florida law on this issue and determine whether it is consistent with federal policy.

 While our focus is on depositors, the issue of whether a complaint states a claim of injury to the individual or to the corpora-

---

5. Fed.R.Civ.P. 23.1 requires a shareholder derivative complaint to allege either that a demand was made or the reasons for failing to make the demand. Courts will excuse the derivative shareholder from the demand requirement when the allegations show that the directors upon whom demand would be made are too involved in the alleged wrongdoing to determine fairly whether the claim should be pursued by the corporation. *Lewis v. Curtis*, 671 F.2d 779, 784–85 (3d Cir.), *cert. denied*, 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 144 (1982). Because FDIC as receiver—not the directors— would decide whether to pursue a claim on behalf of the institutions in this case, the question whether demand could be excused in a depositors' derivative suit is not an issue.

6. Certain defendants also argued for the application of state law before the district court. They have not pressed this argument on appeal, however, because they believe that the result is the same under Florida law or federal law. Even though plaintiffs claim state law applies, they also cite federal law to support their position.

tion usually arises in the context of shareholder suits. Under Florida law, a shareholder may bring an individual action for injuries suffered directly by the shareholder that are separate and distinct from injuries to all other shareholders. *Wolfe v. American Savings & Loan Association,* 539 So.2d 606, 607–08 (Fla.Dist.Ct.App. 1989) (quoting 8 Fla.Jur. § 361 (1978)) (preferred stockholders' suit against officers of savings and loan for damages caused by merger may be maintained as direct action; plaintiffs claim injury to their separate interests as preferred stockholders; corporation not harmed by allegedly wrongful actions). Conversely, a shareholder does not have an individual cause of action for damages that result from injury to the corporation. *Alario v. Miller,* 354 So.2d 925, 926 (Fla.Dist.Ct.App.1978). If the gravamen of the complaint is injury primarily to the corporation or to the shareholders generally, then the claim belongs to the corporation and the shareholder's right to bring the action derives from the corporation. *Id.* (quoting *Citizens National Bank v. Peters,* 175 So.2d 54, 56 (Fla.Dist.Ct.App. 1965)).

 The Florida courts have not specifically addressed the issue of derivative claims in the context of a savings and loan depositors' suit. As a general matter, although a depositor is viewed as a creditor of the corporation, *see* 3A *Fletcher Cyclopedia of the Law of Private Corporations* §§ 1180, 1184 (1986), courts have re-lied on the principles applicable in shareholder suits in deciding whether depositors and other creditors have stated a claim that may be brought individually. *See* 1 *Michie on Banks and Banking* ch. 3, § 69 (1986) (suit against officers and directors must be brought by bank or receiver where wrongful acts affect all depositors or creditors alike) (citing *Adato v. Kagan,* 599 F.2d 1111, 1117 (2d Cir.1979)); 3A *Fletcher, supra,* § 1134 (creditor may sue corporate officer for tort if there is special damage to the creditor suing, not common to other creditors, i.e., injury to individual creditor that is not injury to corporation); *id.* § 1180 (where officer causes loss to corporation through mismanagement, injury results to creditors but primary injury is to corporation itself and the cause of action is asset of corporation or its receiver). In light of the holdings set forth in *Wolfe* and *Alario,* we predict that the Florida courts would do the same, and permit depositors to maintain a nonderivative action against officers or directors only if their alleged injuries are separate and distinct from the injuries sustained by the institution and other depositors.

Federal courts that have considered the question in shareholder suits all have held that shareholders lack standing to assert RICO claims where their injuries are not direct and distinct from any injury sustained by the corporation and shareholders generally.[7] Moreover, a number of federal courts have employed these principles to

---

7. *See Rylewicz v. Beaton Servs., Ltd.,* 888 F.2d 1175, 1179 (7th Cir.1989); *Flynn v. Merrick,* 881 F.2d 446, 450 (7th Cir.1989); *Sparling v. Hoffman Constr. Co.,* 864 F.2d 635, 640 (9th Cir. 1988); *Leach v. Federal Deposit Ins. Corp.,* 860 F.2d 1266, 1273–74 (5th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 3186, 105 L.Ed.2d 695 (1989); *Warner v. Alexander Grant & Co.,* 828 F.2d 1528, 1530 (11th Cir.1987); *Crocker v. Federal Deposit Ins. Corp.,* 826 F.2d 347, 349 (5th Cir.1987), *cert. denied,* 485 U.S. 905, 108 S.Ct. 1075, 99 L.Ed.2d 235 (1988); *Roeder v. Alpha Indus., Inc.,* 814 F.2d 22, 29–30 (1st Cir.1987); *Rand v. Anaconda–Ericsson, Inc.,* 794 F.2d 843, 849 (2d Cir.), *cert. denied,* 479 U.S. 987, 107 S.Ct. 579, 93 L.Ed.2d 582 (1986); *Warren v. Mfrs. Nat'l Bank,* 759 F.2d 542, 544 (6th Cir.1985); *see also Brandenburg v. Seidel,* 859 F.2d 1179, 1191 (4th Cir.1988) (affirming district court's *Burford* abstention in depositors' RICO action against officers and directors of failed savings and loan; action for misfeasance of official duties belongs to state receiver, not depositors); *cf. Gaff v. Federal Deposit Ins. Corp.,* 814 F.2d 311, 315, 317–18 (6th Cir.) (shareholder lacks standing to bring direct action under National Bank Act for damages resulting from diminution in value of corporate shares; such damages do not qualify as a direct or personal injury distinct from injury to other shareholders or corporation) (rejecting *Harmsen v. Smith,* 542 F.2d 496, 502 (9th Cir.1976) (shareholder may sue directly under banking act even though only damage is diminution in value)), *vacated in part on other grounds,* 828 F.2d 1145, 1150 (6th Cir.1987); *Adato v. Kagan,* 599 F.2d 1111, 1117 (2d Cir. 1979) (individual depositors may sue in their own right under banking laws if they have suffered a wrong that is distinctly theirs and not common to all).

decide the question of RICO standing in other contexts.[8] Without deciding the issue, we assume that they would apply the same rules in a depositors' case. *Cf. Downriver Community Federal Credit Union v. Penn Square Bank*, 879 F.2d 754, 764 (10th Cir.1989) (remedy for fraudulent representations affecting all creditors belongs to receiver for benefit of all creditors; uninsured depositors who relied on misleading information available to all depositors may not assert a preference in distribution of insolvent bank's assets by FDIC), *cert. denied*, —— U.S. ——, 110 S.Ct. 1112, 107 L.Ed.2d 1019 (1990); *Brandenburg v. Seidel*, 859 F.2d 1179, 1191 (4th Cir.1988) (depositors' RICO action against officers of failed savings and loan for misfeasance of official duties properly belongs to state receiver rather than to depositors; damages recoverable are assets of institution; *Burford* abstention appropriate).

Notwithstanding that some of these courts have relied on sources other than state law in addressing the issue,[9] under the circumstances, we think it is appropriate to look to state law for guidance in deciding whether plaintiffs have stated a nonderivative claim, rather than to fashion federal common law in this area. Florida law on this issue, which permits nonderivative suits against officers and directors only for injuries that are separate and distinct from injuries sustained by the corporation and all shareholders, comports with

---

**8.** *See Mid–State Fertilizer Co. v. Exchange Nat'l Bank*, 877 F.2d 1333, 1335–36 (7th Cir.1989) (guarantors, like creditors, may not recover directly against lender for injury inflicted on firm; they may pursue their own remedies only if they suffer direct injury—injury independent of firm's fate); *Ocean Energy II, Inc. v. Alexander & Alexander, Inc.*, 868 F.2d 740, 744–47 (5th Cir.1989) (plaintiff who was allegedly defrauded into becoming insured of insolvent insurance company has standing to sue insurance agent; plaintiff did not suffer derivatively from fraud perpetrated on corporation; damages cannot be characterized as property of bankruptcy estate); *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1100–01 (2d Cir.1988) (creditor who was injured by acts of debtor's officers has standing to bring RICO claim even if debtor has a similar right to recovery; creditor does not seek recovery for injuries suffered by debtor), *cert. denied*, —— U.S. ——, 109 S.Ct. 1642 & 1643, 104 L.Ed.2d 158 (1989); *Adams–Lundy v. Association of Professional Flight Attendants*, 844 F.2d 245, 250 (5th Cir.1988) (union members do not have standing under RICO to sue union; assume without deciding that district court was correct in analogizing plaintiffs' claim to shareholder derivative suit); *Carter v. Berger*, 777 F.2d 1173, 1174–76 (7th Cir.1985) (taxpayers are not proper parties to bring RICO suit against individual who defrauded county; taxpayers' injury derives from county's injury; look to directly injured party—not to wrongdoer—for relief); *Warren v. Mfrs. Nat'l Bank*, 759 F.2d 542, 545 (6th Cir.1985) (corporate employee who lost job lacks standing to sue bank under RICO on basis of defendants' misrepresentations to corporation; lost employment was incidental to corporation's injury; plaintiff has no more standing as employee than he does as shareholder).

**9.** Some federal courts have looked to state law to determine whether RICO suits brought by

shareholders were derivative. *See Leach v. Federal Deposit Ins. Corp.*, 860 F.2d 1266, 1273–74 (5th Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 3186, 105 L.Ed.2d 695 (1989); *Crocker v. Federal Deposit Ins. Corp.*, 826 F.2d 347, 349 (5th Cir.1987), *cert. denied*, 485 U.S. 905, 108 S.Ct. 1075, 99 L.Ed.2d 235 (1988). Others have applied rules developed in federal antitrust cases. *See Warren v. Mfrs. Nat'l Bank*, 759 F.2d 542, 544 (6th Cir.1985); *cf. Mid–State Fertilizer Co. v. Exchange Nat'l Bank*, 877 F.2d 1333, 1335 (7th Cir.1989) (borrower's guarantors sue lender; rules established in antitrust cases for identifying proper plaintiffs should be applied to RICO); *Carter v. Berger*, 777 F.2d 1173, 1175 (7th Cir. 1985) (taxpayers sue individual who bribed county employees; antitrust principles should apply in deciding who may sue under RICO). Still other courts have cited without explanation federal case law and general principles of corporate law in deciding the question. *See Rylewicz v. Beaton Servs., Ltd.*, 888 F.2d 1175, 1179 (7th Cir.1989); *Flynn v. Merrick*, 881 F.2d 446, 450 (7th Cir.1989); *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 640 (9th Cir.1988); *Warner v. Alexander Grant & Co.*, 828 F.2d 1528, 1530 (11th Cir.1987); *Roeder v. Alpha Indus., Inc.*, 814 F.2d 22, 29–30 (1st Cir.1987); *Rand v. Anaconda–Ericsson, Inc.*, 794 F.2d 843, 849 (2d Cir.), *cert. denied*, 479 U.S. 987, 107 S.Ct. 579, 93 L.Ed.2d 582 (1986).

In one case, depositors brought a RICO action against the former officers and directors of a failed savings and loan. *Brandenburg v. Seidel*, 859 F.2d 1179 (4th Cir.1988). In ruling on the propriety of the district court's decision to abstain under *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), the Fourth Circuit cited state law when it concluded that plaintiffs' action for misfeasance of official duties properly belonged to the state receiver rather than to the depositors. *Brandenburg*, 859 F.2d at 1191.

the federal policy of deterrence underlying RICO. *See Carter v. Berger*, 777 F.2d 1173, 1176 (7th Cir.1985) (concentrating entire right to recover in hands of directly injured party promotes RICO goal of deterrence). Moreover, it is consistent with RICO's standing requirement, under which suit may be brought only by "[a]ny person injured in his business or property" by reason of the RICO violation, 18 U.S.C. § 1964(c), and with principles applied by federal courts in determining RICO standing, *see* notes 6 & 7, *supra.*

Therefore, in deciding this case, we will apply the law that we predict the Florida courts would employ in this context; that is, claims by depositors based on injuries sustained primarily by the financial institution or by depositors generally belong to the financial institutions initially through their receiver. *See Leach v. Federal Deposit Insurance Corp.*, 860 F.2d 1266, 1274 (5th Cir.1988) (incorporation of state law into RICO for purposes of shareholder suits implicates problem of uniformity throughout the states but is preferable to generating federal common law in this area), *cert. denied*, —— U.S. ——, 109 S.Ct. 3186, 105 L.Ed.2d 695 (1989); *see also Morgan*, 797 F.2d at 475 (when federal government is not party to litigation, neutral state rules that do not undermine federal interests should be applied unless statute or constitution authorizes federal court to create federal rule).

### B.

█ Plaintiffs do not disagree with this statement of the law. They urge, however, that the gravamen of their complaint is that defendants' fraud induced them to deposit their money and maintain their accounts in Old Sunrise. Thus, they contend, they have stated a claim of direct injury because they, not Old or New Sunrise, were injured by defendants' alleged fraud.

█ Whether a claim is individual or derivative is determined from the body of the complaint rather than from the label employed by the parties. *Alario*, 354 So.2d at 926; *Citizens National Bank*, 175 So.2d at 56; *see Kalmanovitz v. G. Heileman*

*Brewing Co.*, 595 F.Supp. 1385, 1399 (D.Del.1984), *aff'd*, 769 F.2d 152 (3d Cir. 1985); 12B *Fletcher Cyclopedia of the Law of Private Corporations* § 5912 (1984 & Supp.1989). Plaintiffs' claim of fraudulent inducement is based on allegations that defendants misrepresented Old Sunrise as a "well run and secure" institution in "publicly disseminated materials," and that defendants failed to disclose that Old Sunrise was not financially secure, that they had mismanaged Old Sunrise, that they had omitted information from the financial statements, and that they had engaged in self-dealing. Complaint ¶¶ 15, 20–25. After reviewing the complaint, we cannot agree with plaintiffs' characterization of these allegations as a claim of direct injury from fraud, distinct from the injury sustained by Old Sunrise and all other depositors as a result of defendants' mismanagement.

In their complaint, plaintiffs contend that "Sunrise's advertisements, press releases, periodic reports and other publicly disseminated materials" portrayed its business techniques and lending practices as "sound, prudent ... secure" and "interest sensitive," its loans as "fully secured," "adequately collateralized," and well controlled, and the institution as "profitable." *Id.* ¶¶ 20, 28. According to plaintiffs, defendants failed to disclose that the lack of proper lending controls prior to 1984 could not be corrected or controlled by Sunrise's 1984 five-year Supervisory Agreement with FSLIC. *Id.* ¶ 28. With respect to the financial condition of Old Sunrise, plaintiffs allege that defendants failed to disclose that a substantial portion of Sunrise's portfolio consisted of risky real estate construction loans, which were inadequately secured, and which were structured to preclude foreclosure during development and to defer classification of the loans as delinquent. Moreover, defendants allegedly failed to disclose that they had understated loan loss reserves and the value of nonperforming loans. *Id.* ¶ 22. With respect to the management of Old Sunrise, plaintiffs allege that defendants failed to disclose that Sunrise did not adhere to sound lend-

ing and banking practices, made loans to developers that exceeded regulatory limits, permitted developers to use checking account overdrafts to pay the interest on outstanding loans, and permitted the diversion of construction funds for other purposes. *Id.* ¶ 23. With respect to Old Sunrise's financial statements, plaintiffs allege that defendants failed to disclose that they had overstated net worth, understated the value of nonperforming loans and loan loss reserves, and improperly classified real estate construction loans. *Id.* ¶ 24. Finally, with respect to self-dealing, plaintiffs allege that defendants failed to disclose that certain defendants had received personal loans from Old Sunrise. *Id.* ¶ 25.

Although the allegations are cast in terms of defendants' misrepresentation of and failure to disclose information, we believe that under the distinct circumstances of this case, such allegations do not state a claim of direct injury founded on fraud. The essence of the complaint is that defendants misrepresented the financial condition of Old Sunrise by failing to disclose that they had mismanaged Old Sunrise rendering the institution insolvent, and that they had employed deceptive operating practices, which prevented federal and state regulators from acting in a timely manner to forestall the insolvency of Old Sunrise. *Id.* ¶ 31. Defendants' mismanagement and wrongdoing brought about the insolvency of Old Sunrise and may have contributed to the insolvency of New Sunrise, thus injuring the depositors indirectly. The asserted injury emanated from mismanagement, not fraud. Furthermore, in this case, the depositors' loss cannot be separated from the injury suffered by the institutions and all other depositors, and the damages recoverable are assets of the institutions. *See Brandenburg,* 859 F.2d at 1191 n. 15 (depositors' loss is derivative of loss suffered by savings and loan when defendants misappropriated its assets, preventing it from earning income on those assets); *id.* at 1191 (depositors' action against officers and directors for misfeasance of official duties belongs to receiver and damages recoverable are assets of institution).

Plaintiffs lack standing to bring an individual suit against defendants on the basis of conduct that primarily injured Old or New Sunrise and only indirectly injured depositors because such a claim belongs to the institutions. *See Wolfe,* 539 So.2d at 607–08; *Alario,* 354 So.2d at 926; *see also* notes 6 & 7, *supra.* We do not believe that plaintiffs can sidestep this prohibition for purposes of stating a RICO claim merely by framing their allegations as misrepresentations and the failure to disclose information. To hold otherwise would eviscerate RICO's standing requirement of injury to plaintiff's business or property by reason of the RICO violation. *See Leach,* 860 F.2d at 1267, 1274 (minority shareholders lack standing to sue under RICO for diminution in value of stock based on allegations that defendants mismanaged bank and failed to disclose true financial condition to shareholders; shareholders have not alleged as individuals any legally cognizable injury); *Crocker v. Federal Deposit Insurance Corp.,* 826 F.2d 347, 348–52 (5th Cir.1987) (minority shareholders lack standing to assert nonderivative RICO claim; allegations that defendants' misrepresentations in financial statements regarding financial condition of bank deterred shareholders from selling stock in time to avoid loss from diminution in value do not state a claim of direct injury to shareholders distinct from injury to corporation), *cert. denied,* 485 U.S. 905, 108 S.Ct. 1075, 99 L.Ed.2d 235 (1988).

Plaintiffs argue that their allegations are sufficient to state a claim of direct injury. They cite *Hinson v. Drummond,* 98 Fla. 502, 123 So. 913, 914 (1929), and *Mallett v. Tunnicliffe,* 102 Fla. 809, 136 So. 346 (1931), as examples of cases where the Florida courts permitted depositors to assert individual fraud claims against bank officers or directors. These cases are distinguishable, however, because they involved officers who personally misrepresented the banks' financial condition directly to an individual depositor, and because the allegations did not link the officers' conduct to injury to the bank or depositors generally. *See id.,* 136 So. at 347; *Hinson,*

123 So. at 914. Similarly, in *Fagan v. Whidden*, 57 F.2d 631 (5th Cir.1932), also cited by plaintiffs, the Court of Appeals for the Fifth Circuit stated that bank officers may be held liable for fraudulently concealing the existence of a deposit from a depositor's guardians. In *Fagan*, however, the bank officer had personally denied the existence of the account in response to a direct inquiry from the guardians and there were no allegations connecting the fraud to any injury to the bank. *Id.* at 631–32. Thus, each of these cases exemplifies the principle that a nonderivative action may be maintained where the injury was sustained by a depositor as an individual, independent of any injury to the bank or other depositors.[10] That is not the case here.

Plaintiffs also cite *Wolfe v. American Savings & Loan Association*, 539 So.2d 606 (Fla.Dist.Ct.App.1989), in which a Florida court permitted preferred shareholders to maintain a direct action against the officers and directors of a savings and loan for damages allegedly arising from the merger of the institution into other corporations. The shareholders claimed that the merger arrangement, under which the right to convert preferred stock into common stock was eliminated, violated the corporation's prior agreement and was a breach of the officers' fiduciary duty to the shareholders. The court held that the claim could be maintained as a direct action because the plaintiffs had alleged "injury to their separate, individualized interests as preferred shareholders alone which would necessarily inure to their own benefit, rather than—as

is true of a derivative claim—that of the corporation itself," and because the corporation had not been harmed by the defendants' allegedly wrongful conduct. *Id.* at 607–08.

Plaintiffs contend that in this case, just as in *Wolfe*, defendants' conduct did not harm the corporation. We disagree. Plaintiffs base their claim on allegations that defendants misrepresented and failed to disclose mismanagement and improper accounting and reporting practices. Thus, their fraud claim is premised on conduct that injured the institutions, and plaintiffs' losses are incidental to and flow from that injury. In *Wolfe*, there was no indication that the challenged merger, or the officers' conduct associated with the merger, injured the corporation in any way. Thus, the *Wolfe* court held that the preferred shareholders had alleged injury to their "separate, individualized interests." *Id.*

Plaintiffs also rely on *Alario v. Miller*, 354 So.2d 925 (Fla.Dist.Ct.App.1978), in which, they contend, "the Florida court declined to hold that plaintiffs' claim of fraud was a derivative action." Plaintiffs' Brief at 22. Plaintiffs' interpretation of *Alario* places an unwarranted gloss on the court's holding. *Alario* was a suit by minority shareholders against the majority shareholder and the chief executive officer, alleging negligence, breach of fiduciary duty, corporate mismanagement, and fraud. Without specifying the nature of the alleged fraud, the court held that the gravamen of the complaint was a derivative, not an individual action. *Id.* at 926.

**10.** Plaintiffs quote 5 *Fla.Jur.2d* Banks & Lending Institutions § 89 (1978) ("Officers and agents rendering false reports of the conditions of the bank may be personally liable to persons injured by reason of such reports;" "that an agent is personally liable for his wrongful or tortious acts directly and proximately injuring a third person, and that he cannot relieve himself by showing his agency, applies fully to the officers and agents of banks.") and 8 *Fla.Jur.2d* Business Relationships § 205 (1978) ("the declaration of an unearned dividend, for the purpose of inducing others to purchase the corporate stock at an exaggerated and inflated or fictitious market value, may constitute fraud for which the directors may be liable to one purchasing such stock."); *id.* § 339 n. 51 (references to forms for complaints by former shareholders for fraudu-

lent misrepresentations by officer as to financial condition of corporation to acquire plaintiff's stock at below market value). We note that the editors of *Fla.Jur.2d* cite *Fagan, Hinson,* and *Mallett* as authority for some of the textual propositions in § 89. We have stated that these cases are distinguishable from this case. Moreover, as we will discuss, we have no quarrel with plaintiffs' position that under certain circumstances, bank officers may be liable directly to depositors for fraudulent representations. Our response is the same to plaintiffs' citation of 3A *Fletcher, supra,* § 1184 ("bank directors and other officers may become liable to an ordinary depositor in the bank for damages for false and fraudulent representations made by them whereby the depositors have suffered loss").

With respect to the fraud claim, the court noted:

> [T]he allegations of fraud are intertwined with the other allegations and only arguably constitute an individual cause of action. We need not treat this point, however, because our review of the record indicates that the cause of action was not proved and that the judgment [below in favor of plaintiffs] was not based on fraud, but if it had been, the judgment would be reversible for failure to carry the burden of proof.

*Id.* at 926 n. 1. Thus, it is not accurate to contend, as plaintiffs have, that the *Alario* court declined to label the fraud claim as derivative. In fact, the court declined to address the issue altogether.

Plaintiffs also cite several federal cases brought by shareholders against bank directors under the federal banking laws. According to plaintiffs, in *Adato v. Kagan,* 599 F.2d 1111 (2d Cir.1979), "the Second Circuit reinstated claims against bank officers, because '[i]ndividual depositors may sue in their own right ... if they have suffered a wrong that is distinctly theirs and not common to all.' ... The court found that plaintiffs' conduct may have been 'fraudulently induced.'" Plaintiffs' Brief at 45–46.

As with *Alario,* plaintiffs' interpretation of *Adato* is misleading. The plaintiffs in *Adato,* in response to a concerted drive for new deposits, had placed their funds in a state-chartered commercial bank which shortly thereafter went into receivership. Subsequently, they learned that their funds had not been entered as deposits but instead credited to several corporate accounts, and thus FDIC refused to recognize their claims. The plaintiffs sued FDIC in state court and certain directors and officers in federal court under federal securities and banking laws. *Id.* at 1114–16.

The Court of Appeals for the Second Circuit recognized that as a general rule, "wrongdoing by bank officers that adversely affects all depositors creates a liability which is an asset of the bank, and only the bank or its receiver may sue for its recovery." *Id.* at 1117. Under the special circumstances of the case, however, the court held that FDIC was "hardly the proper party to represent them in this proceeding." Because FDIC had disputed the plaintiffs' right to be treated as depositors and because the plaintiffs had a suit pending against FDIC, the court concluded that they stood in a different position from other depositors whose right to recover from FDIC had not been challenged. *Id.* Therefore, *Adato* is distinguishable from the present case on the facts, and does not support plaintiffs' position that they should be permitted to proceed with their nonderivative claim.

In *Chesbrough v. Woodworth,* 244 U.S. 72, 37 S.Ct. 579, 61 L.Ed. 1000 (1917), also relied upon by plaintiffs, the Supreme Court found "no reversible error" in a lower court ruling that a shareholder could maintain a direct cause of action under the National Bank Act[11] against bank officers who knowingly authorized a false report upon which the shareholder relied in purchasing stock. *Id.* at 76, 79, 37 S.Ct. at 581, 583. The Court did not discuss or explain its affirmance on this issue, however, as the question of whether the shareholder had stated a nonderivative claim was not before the Court. Moreover, the Court's discussion does not disclose whether the directors' misconduct injured shareholders generally.

Relying on *Chesbrough,* the Court of Appeals for the Ninth Circuit in *Harmsen v. Smith,* 542 F.2d 496 (9th Cir.1976), held that an allegation by shareholders that they had relied to their detriment upon

---

**11.** In its present form, section 93 of the National Bank Act provides:

> If the directors of any national banking association shall knowingly violate, or knowingly permit any of the officers, agents, or servants of the association to violate any of the provisions of this chapter, all the rights, privileges, and franchises of the association shall be thereby forfeited.... And in cases of such violation, every director who participated in or assented to the same shall be held liable in his personal and individual capacity for all damages which, the association, its shareholders, or any other person, shall have sustained in consequence of such violation.

12 U.S.C. § 93 (1988).

false reports issued by bank officers was sufficient to state a claim of direct injury under the National Bank Act, even though the only injury claimed, diminution in share value, was sustained by all shareholders alike. *Id.* at 502. The *Harmsen* court recognized the well-established rule that shareholders may not recover directly for injuries sustained by the bank; they must demonstrate injury to themselves, "as distinct from the bank." *Id.* at 500. However, the court's holding that shareholders may sue directly for diminution in share value, an injury sustained by all shareholders alike, runs counter to this principle and has not been adopted by other courts.[12]

The Court of Appeals for the Sixth Circuit expressly rejected *Harmsen,* holding that shareholders lack standing under RICO and the National Bank Act when the only damage alleged is diminution in share value. *Gaff v. Federal Deposit Insurance Corp.,* 814 F.2d 311, 317 (6th Cir.), *vacated in part on other grounds,* 828 F.2d 1145, 1150 (6th Cir.1987) (state law claims). The court stated: "While this conclusion is contrary to the specific holding in *Harmsen,* it is consistent both with the common law principles ... and with the general principles governing § 93 [The National Bank Act, 12 U.S.C. § 93] set forth in *Chesbrough v. Woodworth....*" *Gaff,* 814 F.2d at 318. We agree and decline to rely on *Harmsen* in deciding this issue.

In *Leach v. Federal Deposit Insurance Corp.,* 860 F.2d 1266 (5th Cir.1988), *cert.*

*denied,* —— U.S. ——, 109 S.Ct. 3186, 105 L.Ed.2d 695 (1989), a RICO and National Bank Act action, the Court of Appeals for the Fifth Circuit attempted to harmonize the apparent conflict between *Chesbrough* and *Harmsen* on the one hand, and the rule that a loss in stock value sustained by shareholders generally is recoverable under the National Bank Act only by the corporation or in a derivative action. The court distinguished the plaintiff in *Chesbrough,* who had been fraudulently induced into becoming a shareholder, from plaintiffs who purchased their stock before the directors' mismanagement had impaired its value. *Id.* at 1272. Viewed in that light, the court concluded that *Harmsen* also was in accord with the rule. *Id.* at 1272–73. If this distinction were valid, it might support plaintiffs' view that the interest they lost upon the insolvency of New Sunrise is recoverable in an individual rather than a derivative action, simply because their original deposit in Old Sunrise allegedly had been induced by defendants' fraud.

We do not believe this is a valid distinction in this case. Underlying the rule that diminution in share value is an injury to the corporation and shareholders generally is the principle that decreases in share value reflect decreases in the value of the company. *Rand v. Anaconda–Ericsson, Inc.,* 794 F.2d 843, 849 (2d Cir.), *cert. denied,* 479 U.S. 987, 107 S.Ct. 579, 93 L.Ed.2d 582 (1986). The principle is equally valid in depositor cases. The loss in value of de-

---

**12.** *See, e.g., Rylewicz,* 888 F.2d at 1179 (standing rule that shareholders may not bring individual claims under RICO for diminution in corporation's value prevails in all circuits that have considered the matter); *Flynn,* 881 F.2d at 449 (decrease in value of shareholders' interest is an injury to corporation; shareholders' injury was indirect result of damage to corporation); *Sparling,* 864 F.2d at 640 (plaintiffs must show injury distinct from that to other shareholders to have standing under RICO); *Leach,* 860 F.2d at 1269 (law treats injury to all shareholders as corporate injury and injury not suffered by other shareholders as personal injury; directors' mismanagement resulting in diminution of stock value is corporate injury); *Gaff,* 814 F.2d at 317 (shareholder lacks standing to bring direct cause of action under federal law when only damage alleged is diminution in corporate value); *Roeder,* 814 F.2d at 30 (shareholder may

not maintain RICO action in his own right for injury to corporation and decline in stock price affecting shareholders generally); *Rand,* 794 F.2d at 849 (shareholders lack standing to sue under RICO because their injury—decrease in share value—reflects decrease in value of firm and is corporate asset that cannot be brought without impairing rights of prior claimants); *Warren,* 759 F.2d at 544 (diminution in value of stock is insufficient direct harm to give shareholder standing to sue in his own right under RICO); *Wolfe,* 539 So.2d at 607 (stockholder may bring suit to redress injury sustained directly by him and which is separate and distinct from that sustained by other shareholders); *Alario,* 354 So.2d at 926 (if gravamen of complaint is injury to corporation or to shareholders generally, then claim belongs to corporation); *Citizens Nat'l Bank,* 175 So.2d at 56 (same).

positors' certificates reflects the impaired condition of the financial institution. The injury—loss of principal or interest—is sustained by all depositors and is incidental to and dependent on injury to the institution. Therefore, the institution or its receiver is the proper party to sue for the benefit of all depositors and creditors, or, after an unsuccessful demand, the depositors may bring a derivative action. The alternative, permitting depositors to bring individual actions for such injuries, would invariably impair the rights of other general creditors and claimants with superior interests. *See Rylewicz v. Beaton Services, Inc.*, 888 F.2d 1175, 1179 (7th Cir.1989); *Rand*, 794 F.2d at 849; *see also Warren v. Manufacturers National Bank*, 759 F.2d 542, 545 (6th Cir.1985); *cf. 3A Fletcher, supra*, § 1282. In our view, the fact that the officers' and directors' alleged fraud may have induced all of the depositors to make their original deposits does not justify bypassing this equitable and common-sense system for recovery, especially in circumstances like these, where all the depositors' losses are inextricably linked to the insolvency of New Sunrise. In cases like this, actions to recover losses on certificates of deposit sustained by depositors generally are derivative and belong to the institution or its receiver. *See Adato*, 599 F.2d at 1117; *In re Longhorn Securities Litigation*, 573 F.Supp. 255, 272 (W.D.Okla.1983) (individual depositors may sue bank officers directly if they suffer wrong that is uniquely theirs and not common to all); 1 *Michie, supra*, § 69.

As these cases demonstrate, in some circumstances, depositors may bring individual RICO actions against officers, directors, and others who fraudulently obtain deposits by misrepresenting the financial condition of an institution. This would be the case where the officer's alleged misconduct primarily injured the depositor rather than the institution, and where the injury suffered by the depositor is not shared by depositors generally and is distinct from any injury to the institution. *See Downriver*, 879 F.2d at 764 (absent fraudulent representations made directly to plaintiff with respect to financial condition of bank, plaintiff's rights are not superior to rights of other depositors and creditors; remedy for fraudulent representations affecting all creditors belongs to receiver; Congress did not intend to deluge FDIC with claims for preferential constructive trusts on behalf of uninsured depositors who allegedly relied on misleading information available to all depositors); *Adato*, 599 F.2d at 1117; *In re Longhorn Securities Litigation*, 573 F.Supp. at 272; *Mallett*, 136 So. at 348; *Hinson*, 123 So. at 914; *cf. Sparling v. Hoffman Construction Co.*, 864 F.2d 635, 640 (9th Cir.1988) (shareholder must show injury distinct from that to other shareholders to have standing to assert RICO claims based on injury to corporation); *Roeder v. Alpha Industries, Inc.*, 814 F.2d 22, 30 (1st Cir.1987) (shareholder may not maintain RICO action in his own right unless injury to stock is peculiar to plaintiff alone and does not fall upon other shareholders); *Wolfe*, 539 So.2d at 608.

The complaint and record here do not present such a case. As we see it, plaintiffs' fraudulent inducement claim rests on allegations that defendants misrepresented and failed to disclose "to federal and state regulators and the public, including plaintiffs," that defendants had injured Old Sunrise. New Sunrise's insolvency may have resulted from defendants' mismanagement, self-dealing, and improper accounting and reporting practices while at Old Sunrise. But the only damage claimed by plaintiffs, the loss of their uninsured deposits, emanated from the mismanagement and wrongdoing and cannot be separated from the injury sustained by the institutions and by depositors generally. Plaintiffs do not assert and the record does not disclose that they received personal assurances from defendants that Old Sunrise was financially stable. Rather, plaintiffs contend that certain "publicly disseminated materials" available to all depositors alike (none of which are part of the record) falsely portrayed Old Sunrise's business strategy and lending techniques as "sound, prudent and secure." Complaint ¶ 20. These allegations state a claim of injury primarily to the institutions that in turn

affected depositors generally.[13] It can be brought by the receiver on behalf of all depositors and creditors or as a derivative claim, but it is not a claim of a distinct, direct injury for which plaintiffs can recover as individuals under RICO.

Important policy considerations support the dismissal of this action in light of our determination that the depositors' claims are derivative. As we have stated, courts generally have recognized that permitting indirectly injured parties to sue wrongdoers under RICO may lead to a multiplicity of suits and potentially impair the rights of other claimants. See Rylewicz, 888 F.2d at 1179; Rand, 794 F.2d at 849; Warren, 759 F.2d at 545; cf. 3A Fletcher, supra, § 1282. This principle has special significance in this case, where continuation of plaintiffs' suit could disrupt the efforts of FDIC to recover the institution's assets, which were depleted by defendants' mismanagement and wrongdoing, for equitable distribution among all depositors and creditors in accordance with the federal priority scheme. Cf. Downriver, 879 F.2d at 764 (uninsured depositors' suit against insolvent bank and its receiver (FDIC) seeking imposition of constructive trust upon bank assets could jeopardize orderly administration of receiver's estate;

depositors are limited to pro rata share of assets held by receiver); Brandenburg, 859 F.2d at 1191–92 (Burford abstention appropriate; continuation of depositors' RICO suit against officers and directors of failed savings and loan could disrupt state receiver's efforts to recover institution's assets for distribution to depositors and creditors who sustained losses because of mismanagement by officers and directors).

FDIC brought suit against defendants on September 2, 1986, alleging negligence and breach of fiduciary duty, and seeking more than $589 million in damages. See FSLIC v. Jacoby, CA No. 86–7567, MDL No. 655 (E.D.Pa.). On May 29, 1990, over the Popkins' objections, the district court approved a settlement agreement between FDIC, the shareholders of Old Sunrise, and a number of defendants. In re Sunrise Securities Litigation, MDL No. 655, 131 F.R.D. 450 (E.D.Pa.1990); see note 2, supra. According to FDIC, funds recovered under this agreement will be applied toward the claims against FDIC, including the depositors' claims, in accordance with the distribution scheme established under the receivership regulations, 12 C.F.R. §§ 388.4, 389.-11 (1990); id. §§ 569a.7, 569c.11 (1989).[14]

**13.** Plaintiffs contend that the loss they sustained was not shared by all other depositors; only those whose deposits were not fully covered by the FSLIC insurance limit suffered when New Sunrise failed. We are not persuaded that this factor distinguishes plaintiffs' claims. All prospective depositors had access to the same "publicly disseminated" information regarding the management and financial condition of Old Sunrise. Plaintiffs do not allege that special assurances were given to those whose accounts exceeded the insurance limit and or that they held a special interest in their deposit distinct from the interest of the fully insured depositors. See Wolfe, 539 So.2d at 607–08. Although only the uninsured depositors suffered a financial loss when New Sunrise failed, all Old Sunrise depositors were affected by the misconduct that brought about the insolvency. Only the actions of FSLIC prevented the fully insured depositors from standing in plaintiffs' shoes. Moreover, plaintiffs have received and should continue to receive distributions as the receiver liquidates the institutions' assets.

**14.** Plaintiffs cite Coit Independence Joint Venture v. Federal Savings & Loan Insurance Corp.,

489 U.S. 561, 109 S.Ct. 1361, 103 L.Ed.2d 602 (1989), contending that the Supreme Court has rejected a broad reading of 12 U.S.C. § 1464(d)(11) (1988), amended by FIRREA, Pub.L. No. 101–73, § 301, 103 Stat. 183 (1989), the statutory authority under which the receivership regulations were promulgated. The issue before the Court in Coit was "whether FSLIC has exclusive authority to adjudicate the validity of creditors' state law claims against failed savings and loan associations under a FSLIC receivership." Coit, 109 S.Ct. at 1366 (emphasis added). The Court held that "Congress has not granted FSLIC the power to adjudicate creditors' claims against the assets of a failed savings and loan association under FSLIC receivership, and that creditors are entitled to de novo consideration of their claims in court." Id. at 1376. Coit did not address either the validity of the priority scheme established by the receivership regulations or FDIC's power to sue third parties to recover the institution's assets for the benefit of all creditors and depositors. As noted by FDIC in its brief: "Since the validity of the Popkins' claims [was] never disputed, Coit has no bearing on this case." FDIC Brief at 15 n. 23.

The Popkins objected to the settlement on grounds that it depleted defendants' liability insurance, thus limiting the depositors' ability to recover from these defendants directly. 131 F.R.D. at 458. FDIC contends, however, that it is best able to maximize recovery for all depositors, who have recovered 100% of their Old Sunrise deposits, 100% of their insured New Sunrise deposits, and, to date, 43.45% of their uninsured New Sunrise deposits through FDIC's efforts. According to FDIC, permitting plaintiffs to sue directly for claims emanating from injury to the institutions would circumvent the priority scheme by enabling depositors to recover the institutions' assets in advance of other general creditors and claimants with superior interests, such as secured creditors. This result, argues FDIC, is both inequitable and inefficient, and threatens to further complicate the immense task of liquidating the institutions' assets. We agree.

Plaintiffs cite *Federal Deposit Insurance Corp. v. Jenkins*, 888 F.2d 1537 (11th Cir.1989), for the proposition that Congress declined to recognize a priority for FDIC claims over the claims of depositors, creditors, or shareholders against the officers, directors, attorneys, or accountants of insured financial institutions. In *Jenkins*, FDIC brought a declaratory judgment action against the shareholders of an insolvent FDIC-insured bank, seeking a declaration that FDIC's claims against the bank's officers and directors had priority over the shareholders' claims against these defendants. *Id.* at 1538–39. The Court of Appeals for the Eleventh Circuit held that FDIC was not entitled to priority by virtue of its status as insurer of the failed bank. Moreover, the court declined to fashion a federal common law absolute priority rule. *Id.* at 1544.

As noted by the Eleventh Circuit in its review of the legislative history of FIR-REA, Pub.L. No. 101–73, 103 Stat. 183 (1989), the conference committee rejected a Senate amendment that would have granted such a priority to FDIC claims. *Jenkins*, 888 F.2d at 1538 n. 1 (citing 135 Cong.Rec. H4985, H4989 (daily ed. Aug. 3, 1989) (statement of Rep. Glickman)). We do not disagree with the Eleventh Circuit's discussion of the legislative history of FIR-REA, nor do we believe that our holding is inconsistent with *Jenkins*. To the extent that depositors assert individual, nonderivative fraud claims against the officers, directors, auditors, or attorneys of insolvent financial institutions, they may proceed on equal footing with FDIC against these defendants. That is not the circumstance here. In this case, we hold that the claims are derivative and belong to FDIC as receiver. Therefore, FDIC should be permitted to pursue these claims on behalf of all depositors and creditors and to distribute the proceeds equitably.

We recognize that plaintiffs suffered a personal financial loss when New Sunrise failed. However, this fact alone does not confer standing to pursue a claim under RICO that in every relevant way is identical to the claims of all other New Sunrise depositors, and which arose by virtue of injuries sustained by Old or New Sunrise. In this instance, recovery must come through the efforts of FDIC on their behalf or through a derivative suit after an unsuccessful demand upon FDIC.

### III.

For the foregoing reasons, we hold that plaintiffs' RICO claim is derivative and may not be brought by plaintiffs as an individual action. Therefore, we will affirm the district court's grant of summary judgment and the dismissal of plaintiffs' complaint.

Costs taxed against appellants.